UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                          |   |                              |
|--------------------------|---|------------------------------|
| CAROL PROAL,             | ) |                              |
|    Plaintiff, | ) |                          |
|                          | ) |                              |
| v.                       | ) | **CIVIL ACTION**             |
|                          | ) | **NO. 14-14292-DHH**         |
| JPMORGAN CHASE, et al.   | ) |                              |
|    Defendants. | ) |                         |

## ORDER

**June 9, 2015**

Hennessy, M.J.

This matter is before the court on Defendant JP Morgan Chase Bank, N.A.'s (improperly sued as JPMorgan Chase) ("JPMC") Motion to Dismiss pursuant to Federal Rules of Procedure 12(b)(1) and 12(b)(6).[1] (Docket #17). Plaintiff Carol Proal has filed a response (Docket #23). Pursuant to court order, (Docket #28), the parties filed additional submissions concerning the manner in which notice was given pursuant to 12 U.S.C. § 1821(d)(3)(b). (Dockets #29, 30). This matter is now ripe for adjudication. For the reasons that follow, JPMC's Motion is ALLOWED.

---

[1] Because the Court finds that the motion should be granted pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court does not address JPMC's arguments under Rule 12(b)(6). See Feliciano v. Rullan, 303 F.3d 1, 6 (1st Cir. 2002) ("[T]he preferred – and often the obligatory – practice is that a court, when confronted with a colorable challenge to its subject-matter jurisdiction should resolve that question before weighing the merits of a pending action.").

I.  BACKGROUND

Proal is the record owner of real property located at 317 Ridge Road, Hardwick, Massachusetts (the "Property"). (Compl. at ¶ 3).[2] On January 17, 2007, Proal obtained a loan with SouthStar Funding, LLC ("SouthStar"), the repayment of which was secured by the Property. (Id. at ¶ 16). In connection with this transaction, Proal executed a promissory note in the original principal amount of $875,000 in favor of SouthStar (the "Note") and granted a mortgage on the Property to SouthStar (the "Mortgage" and collectively with the Note, the "Loan"). (Dockets #19-2; 19-3). On April 3, 2008, the Note was acquired by and the Mortgage was assigned to Washington Mutual Bank ("WaMu"). (Compl. at ¶¶ 18, 23; Docket #19-4).

In 2008, WaMu was placed into receivership by the Federal Deposit Insurance Corporation ("FDIC"). (Compl. at ¶ 32). On September 25, 2008, JPMC acquired certain of WaMu's assets and liabilities, including the Loan, as set forth in a Purchase and Assumption Agreement among the FDIC, the FDIC receiver, and JPMC. (Compl. at ¶ 2, 32; Docket #19-7).

On November 20, 2014, Proal filed the instant action in Worcester Superior Court. (Compl.). JPMC removed the action to this court on December 2, 2014. (Docket #1).

II.  STANDARD

Federal courts are courts of limited jurisdiction; they possess only those powers granted by either the Constitution or statute, and cannot adjudicate claims absent such power. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "The existence of subject-matter jurisdiction 'is never presumed.'" Fafel v. DiPaola, 399 F.3d 403, 410 (2005) (quoting Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)). Once challenged, the party invoking the jurisdiction of a federal court carries the burden of proving its existence by a preponderance of

---
[2] The Complaint is available at Docket #11-2.

2

the evidence. Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir. 2008); Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the court must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor. Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). The court may also "consider whatever evidence has been submitted, such as the depositions and exhibits submitted." Id. (quoting Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996)). In doing so, the court does not convert the motion to dismiss into a motion for summary judgment. Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).

III.  ANALYSIS

A.  Claims

Proal alleges that SouthStar engaged in predatory home loan practices by entering into a consumer credit transaction with Proal that was a high cost home mortgage loan.[3] (Compl. at ¶ 10). In Count I of her Complaint, Proal asserts that JPMC is liable under the Massachusetts Predatory Home Loan Practices Act, Mass. Gen. Laws ch. 183C, §§ 1 et seq., as a purchaser of SouthStar's high-cost home mortgage loan to Proal. (Compl. at ¶ 48). As admitted by Proal in her response, the remaining substantive counts of her Complaint are derivative of Count I and asserted against JPMC pursuant to Massachusetts General Laws chapter 183C, section 15.[4]

---

[3] The Massachusetts Predatory Home Loans Practices Act prohibits a lender from making a high-cost home mortgage loan unless the lender reasonably believes at the time the loan is executed that the borrower "will be able to make the scheduled payments to repay the home loan based upon a consideration of the [borrower's] current and expected income, current and expected obligations, employment status, and other financial resources other than the borrower's equity in the dwelling which secures repayment of the loan." Mass. Gen. Laws ch. 183C, § 4. "High-cost home mortgage loan" is a term of art defined in section 2 of Massachusetts General Laws chapter 183C.

[4] Pursuant to section 15(a) of the Massachusetts General Laws chapter 183C, subject to certain exceptions, "[a]ny person who purchases or is otherwise assigned a high-cost home mortgage loan shall be subject to all affirmative claims and any defenses with respect to the loan that the borrower could assert against the original lender of the loan."

3

(Docket #22 at 6-8). Count II asserts a claim for violation of Massachusetts General Laws chapter 93A, Count III a claim for unconscionable contract, and Count IV a claim for negligent and intentional infliction of emotional distress. (Compl. at ¶¶ 53-72).

Proal also asserts a claim for a declaratory judgment in Count V of the Complaint. (Compl. at ¶¶ 73-80). "[T]he operation of the Declaratory Judgment Act is procedural only." Aetna Life Ins. Co. v. Hayworth, 300 U.S. 227, 240 (1937). A court cannot declare the rights of parties without reference to the applicable substantive law; if the applicable substantive law requires dismissal, a claim for declaratory relief must be dismissed as well. See John Beaudette, Inc. v. Sentry Ins., 94 F. Supp. 2d 77, 98-99 (D. Mass. 1999) (holding that action for declaratory relief is time-barred to the extent the underlying substantive claim is time-barred).

In her Complaint, Proal seeks an order rescinding the Note, an order barring foreclosure or any lender action under the Mortgage, an order stating that she owns the Property in fee simple, damages, punitive damages, and attorney's fees and costs. (Compl. at 19-21).

JPMC asserts that Proal's failure to follow the exclusive process set forth in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") before filing the instant litigation has stripped this court of subject matter over her Complaint. (Docket #18 at 2).

B.   Financial Institutions Reform, Recovery, and Enforcement Act of 1989

"FIRREA sets forth a detailed claims-processing regime," which must be followed for all claims that "arise out of and relate exclusively to pre-receivership acts or omissions of [] failed financial institution[s]." Demelo v. U.S. Bank Nat'l Assoc., 727 F.3d 117, 121-22 (1st Cir. 2013). "This claims-processing regime is not optional: participation in it is 'mandatory for all parties asserting claims against failed institutions.'" Id. at 122 (quoting Marquis v. FDIC, 965 F.2d 1148, 1151 (1st Cir. 1992)). FIRREA clearly proscribes judicial review of covered claims

where a plaintiff has failed to comply with the statutorily mandated claims-processing regime. Id. (citing 12 U.S.C. § 1821(d)(13)(D)).

Proal has not alleged that she followed FIRREA's claims-processing regime prior to instituting the instant proceedings and, in fact, implies that she has not and that she need not comply with the regime. (Compl. at ¶¶ 34, 35). Proal offers three arguments in support of this position.

First, Proal asserts that because the claims in her Complaint are a result of the actions of SouthStar and not the failed bank, her action is not a claim under FIRREA, but rather brought against JPMC as acquirer of the Loan. (Compl. at ¶¶ 33-34). However, "this determination of successor liability has no bearing . . . because here . . . [JPMC] acquired the [Loan] by way of the powers vested in the FDIC under FIRREA." Demelo, 727 F.3d at 124. Hence, if there is no independent claim asserted against JPMC, Proal's claims are subject to the claims-processing requirements and corresponding jurisdictional bar of FIRREA. Id.

Proal next argues that she has asserted an independent claim against JPMC for a violation of the Predatory Home Loan Practices Act based on JPMC's failure to exercise due diligence when the Loan was assigned and, therefore, her claim is not subject to FIRREA's statutory scheme. (Docket #22 at 4). Under the Predatory Home Loan Practices Act, "[a]ny person who purchases or is otherwise assigned a high-cost home mortgage loan shall be subject to all affirmative claims and any defenses with respect to the loan that the borrower could assert against the original lender or broker of the loan" subject to certain exceptions. Mass. Gen. Laws ch. 183C, § 15(a). To qualify for an exception, a purchaser or assignee must demonstrate, by a preponderance of the evidence, that it "exercise[d] reasonable due diligence at the time of purchase or assignment of home loans or within a reasonable period of time after the purchase or

5

assignment of the home loans, intended by the purchaser or assignee to prevent the purchaser or assignee from purchasing or taking assignment of any high-cost home mortgage loans[.]" Mass. Gen. Laws ch. 183C, § 15(a)(3). Contrary to Proal's argument, this provision does not provide an independent basis for a claim against an assignee; instead, it outlines those situations in which an assignee would not be subject to claims or defenses that the borrower could assert against the original lender or broker of the loan.[5]

Alternatively, Proal asserts that, even if FIRREA were to apply to her claims, because the FDIC-Receiver failed to provide notice to Proal, FIRREA does not operate to bar her claims in this action. (Compl. at ¶ 35). Pursuant to FIRREA,

> The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall –
>
> (i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice; and
>
> (ii) republish such notice approximately 1 month and 2 months, respectively, after the publication under clause (i).

12 U.S.C. § 1821(d)(3)(B). The receiver must mail a similar notice to creditors appearing on the institution's books and claimants not appearing on the books but whose names and addresses the receiver later discovers. 12 U.S.C. § 1821(d)(3)(C). "FIRREA only requires that the FDIC mail notice to known creditors or claimants." Demelo, 727 F.3d at 124. As Proal's claims were not advanced until after WaMu failed, they could not have been known to the FDIC at the time of

---

[5] The court notes that even if Proal were able to proceed on an independent claim under the Predatory Home Loan Practices Act, such a claim would be barred by the statute of limitations. A borrower may bring an original action for violation of the Predatory Home Loans Practices Act within five years of the closing of a high-cost home mortgage loan. Mass. Gen. Laws. ch. 183C, § 15(b)(1). The mortgage was executed on January 17, 2007, and Proal filed suit on November 20, 2014, more than seven years later. (Compl.). Likewise, her remaining substantive claims would also be time-barred – claims brought under chapter 93A are subject to a four-year statute of limitations, Mass. Gen. Laws ch. 260, § 5A; actions in contract are subject to a six-year statute of limitations, Mass. Gen. Laws ch. 260, § 2; and actions for infliction of emotional distress are subject to a three-year statute of limitations, Mass. Gen. Laws ch. 260, § 2A.

receivership.  On October 1 and October 31, 2008, the FDIC published notice in the Wall Street Journal, a national publication, informing creditors of WaMu that any claims against WaMu had to be submitted in writing to the FDIC by December 30, 2008.  (Docket #29 and accompanying exhibits).  This notice by publication was "sufficient for inchoate claims."[6]  Demelo, 727 F.3d at 124 (holding that notice by publication was sufficient for plaintiff mortgagors' consumer protection claims that were advanced only after bank's failure).  Regardless, any failure by the FDIC-receiver to provide notice does not relieve Proal of her obligation to exhaust administrative remedies under FIRREA; the statute does not provide a waiver or exception if notice is not provided.  See Intercontinental Travel Mktg., Inc. v. FDIC, 45 F.3d 1278, 1285 (9th Cir. 1994) (holding that as statute imposed no consequence on the FDIC for failure to mail the requisite notice, plaintiff was required to exhaust administrative remedies under FIRREA); Meliezer v. Resolution Trust Co., 952 F.2d 879, 882-83 (5th Cir. 1992) (holding that receiver's failure to mail notice required pursuant to 12 U.S.C. § 1821(d)(3)(C) does not relieve claimant of obligation to exhaust administrative remedies).

Proal was required to exhaust her administrative remedies under FIRREA.  Her failure to do so has divested this court of subject matter jurisdiction over this action.

IV. CONCLUSION

For the foregoing reasons, Defendant JPMC's Motion to Dismiss (Docket #17) is ALLOWED.

/S/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE

---

[6] The court notes that FIRREA "creates a pathway for the holder of [an inchoate] claim to introduce it into the claims-processing regime." Demelo, 727 F.3d at 124 (citing 12 U.S.C. § 1821(d)(5)(A)(ii), (C)(ii)).  Proal has not alleged that she attempted to invoke this remedy prior to filing the instant proceedings.